## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| JARON DEAN, | ) | CASE NO. 4:06CV3016 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM |
| | ) | AND ORDER |
| KATHY BLUM, et. al., | ) | |
| | ) | |
| Defendants. | ) | |

The plaintiff, an inmate at the Tecumseh State Correctional Institute ("TSCI") of the Nebraska Department of Correctional Services ("DCS"), has filed this proceeding in forma pauperis. He initially filed suit against DCS only. See Filing No. 1. The court's March 31, 2006, order on initial review, Filing No. 8, instructed the plaintiff that DCS, a state agency, lacks capacity to be sued in its own name. The order on initial review further advised the plaintiff that although specific persons were mentioned in the body of his complaint, if the plaintiff intended to seek a remedy from any of these persons, he must amend the complaint and add those persons as named defendants. The order also instructed the plaintiff that he should specify whether the defendants were being sued in their individual capacity, official capacity, or both. The plaintiff was given leave to file an amended complaint. See Filing No. 8, p. 2.

The plaintiff's amended complaint was filed on April 13, 2006. See Filing No. 9. The amended complaint named Frank Hopkins, Frances Britten, Kenneth Quinn, Rex Richard, Kathy Blum, Diane Sabatka-Rine, Martha Schmidt, Pam Hillman, Sergeant Simon, Caseworker Dallmann, and Jodi Heard as defendants. Each of these named defendants is being sued in his or her official and individual capacities. Filing No. 9, ¶ 13. The plaintiff's suit is brought pursuant to 42 U.S.C. § 1983 and alleges defendants' conduct violated his procedural and substantive due process rights, his right to free exercise of religion, his equal protection rights, 42 U.S.C. § 2000-cc, and Title 68 of the Nebraska Administration Code, Chapter 7 § 003.04. He seeks declaratory and injunctive relief, punitive damages, and recovery of costs and fees for the prosecution of this action. Filing No. 9, ¶¶ 62-66.

With the exception of defendant Quinn, the defendants named in plaintiff's amended complaint were served. The service of summons on defendant Quinn was returned unexecuted on June 22, 2006. See Filing Nos. 16 & 17. The remarks on the Marshal's return explained: "Records personnel at Tecumseh report that Quinn has moved to the State of Washington with no forwarding info." Filing No. 17. There is nothing of record indicating the plaintiff made further attempts to serve Quinn, or that he requested additional time to locate and serve Quinn. More than a year has elapsed since the plaintiff filed the amended complaint and unsuccessfully attempted to serve it.

A federal trial court has the inherent power to dismiss a plaintiff's action with prejudice for failure to prosecute. Link v. Wabash R. Co. 370 U.S. 626, 629 (1962). "[W]hen circumstances make such action appropriate, a District Court may dismiss a complaint for failure to prosecute even without affording notice of its intention to do so or providing an adversary hearing before acting." Link v. Wabash R. Co., 370 U.S. 626, 633 (1962). Under the totality of the circumstances presented in this case, I find that with respect to defendant Quinn, the plaintiff's claim should be dismissed with prejudice for failure to prosecute.

As to the remaining named defendants, all of whom were served, answers were filed on behalf of each of these defendants. These answers allege that plaintiff's complaint fails to state a claim upon which relief can be granted. These defendants also raise Eleventh Amendment and qualified immunity defenses. See Filing Nos. 36, 40 & 48.

Pending before me is the motion for summary judgment filed by defendants, Frances Britten, Martha Schmidt, Pam Hillman, Sergeant Simon, Caseworker Dallmann, Diane Sabatka-Rine, and Jodi Heard, in their individual capacities only. Filing No. 53. The summary judgment motion was not brought on behalf of defendants Kathy Blum, Frank Hopkins, Rex Richard in their individual capacities, and it does not address any claims against any of the defendants in their official capacities.

However, the plaintiff is pursuing this case in forma pauperis. As such, the suit is subject to the court's continuing sua sponte review under 28 U.S.C. § 1915(e)(2).

28 U.S.C. § 1915(e)(2) provides:

Notwithstanding any filing fee, or any portion thereof, that may have been paid, the court shall dismiss the case at any time if the court determines that--
. . .

(B) the action or appeal--

    (i)    is frivolous or malicious;

    (ii)    fails to state a claim on which relief may be granted; or

    (iii)    seeks monetary relief against a defendant who is immune from such relief.

28 U.S.C. § 1915(e)(2)(B).

Accordingly, this memorandum and order includes the court's ruling upon review pursuant to 28 U.S.C. § 1915(e)(2), followed by its ruling on the pending motion for summary judgment.

Having thoroughly reviewed the plaintiff's amended complaint, I conclude dismissal of all claims other than plaintiff's free exercise of religion claims is warranted under 28 U.S.C. § 1915(e)(2)(ii) and (iii). Accordingly, rather than addressing the defendants' motion for partial summary judgment on behalf of some, but not all, of the named defendants in their individual capacities only, pursuant to 28 U.S.C. § 1915(e)(2)(ii) and (iii), this memorandum and order will dismiss plaintiff's equal protection and due process claims as to all the defendants in their official and individual capacities, and all claims for punitive damages against all defendants in their official capacities.

Having considered the additional evidence filed by the defendants Frances Britten, Martha Schmidt, Pam Hillman, Sergeant Simon, Caseworker Dallmann, Diane Sabatka-Rine, and Jodi Heard, in their individual capacities only, I further find they are entitled to summary judgment on plaintiff's free exercise of religion claims.

### SUA SPONTE REVIEW: 28 U.S.C. § 1915(E)(2)(B).

#### Standard of Review

When reviewing an amended complaint for failure to state a claim, the court must construe the allegations in the light most favorable to the plaintiff. An in forma pauperis complaint is subject to dismissal with prejudice under 28 U.S.C. § 1915(e)(2)(B)(ii) for failing to state a claim if it appears beyond doubt that the plaintiff cannot prove any set of facts which would entitle him to relief. Goodroad v. Bloomberg, 1997 WL 633078, *1 (8th Cir. 1997)(affirming dismissal of pro se prisoner complaint with prejudice upon review under 28 U.S.C. § 1915(e)(2)(B)(ii)(citing Mitchell v. Farcass, 112 F.3d 1483, 1490 (11th Cir. 1997)(applying Fed.R.Civ.P.12(b)(6) standard of review to section 1915(e)(2)(B)(ii) dismissal) and Carney v. Houston, 33 F.3d 893, 894 (8th Cir. 1994)(applying Rule 12(b)(6) standard of review)).

A pro se complaint must contain specific facts supporting its conclusions. See Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir.1985). In this case, the plaintiff's amended complaint includes thirteen attached exhibits. Pursuant to Rule 10(c) of the Federal Rules of Civil Procedure, "[a] copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes." Accordingly, the facts set forth in the exhibits attached to the amended complaint must be considered when assessing whether the plaintiff's suit is subject to dismissal under 28 U.S.C. § 1915(e)(2)(B)(ii).

#### Rule 11 of the Federal Rules of Civil Procedure

Neither the plaintiff's complaint, nor his amended complaint, was signed by the plaintiff. Under Rule 11 of the Federal Rules of Civil Procedure, "[a]n unsigned paper shall be stricken unless omission of the signature is corrected promptly after being called to the attention of the . . . party." The plaintiff is hereby notified that his amended complaint is unsigned. The plaintiff may correct this defect by filing a certificate which states that the

allegations and legal contentions set forth in the amended complaint, filing 9, are his. This certificate must be signed by the plaintiff. The certificate must include the plaintiff's current address and must be submitted to the Clerk of the Court for filing. Pursuant to Rule 11, the court will strike the amended complaint without further notice if plaintiff fails to comply with this order.

Notwithstanding the lack of any signature as required under Rule 11, I shall proceed to consider the allegations of the unsigned amended complaint to assess whether dismissal of all or part of plaintiff's claims is warranted under 28 U.S.C. § 1915(e)(2)(B).

## The Amended Complaint

The plaintiff is an inmate at the Tecumseh State Correctional Institute ("TSCI") of the Nebraska Department of Correctional Services ("DCS"). Filing No. 9, ¶ 1. He practices and worships in the Ma'at faith, and in 2004, was elevated to the title of Seba priest, meaning teacher. Filing No. 9, ¶¶ 16-18. Those practicing the Ma'at faith at the TSCI belong to the Amen Ra Temple of Ma'at. This Temple has a worship service on Mondays and a educational night on Thursdays. Filing No. 9, ¶ 17.

On or about August 9, 2004, plaintiff became a legal aide at TSCI's law library. His job duties included helping inmates research legal matters and retrieving books and forms to help assist inmates. Filing No. 9, ¶ 20. Defendant Heard was the librarian at TSCI's law library. Filing No. 9, ¶ 12. The plaintiff was originally assigned to the Protective Custody ("PC") law library, but later agreed to switch to the special management unit ("SMU") library at the request of defendant Heard. When the plaintiff began working in the SMU library, he shared the work with another inmate, and together they developed a working schedule that accommodated their respective personal schedules. Filing No. 9, ¶¶ 20-21.

The other SMU legal aide quit the job on May 20, 2005. At defendant Heard's request, Pat Russle was temporarily approved and assigned to help the plaintiff with the SMU law library. Filing No. 9, ¶¶ 22-23, 37. The plaintiff and Russle agreed to continue following the work schedule plaintiff had with the previous legal aide. The plaintiff signed this schedule and provided it to defendant Heard. However, Russle backed out of this agreement and did not sign the schedule. Filing No. 9, ¶¶ 24-26.

On the evening of May 23, 2005, a Monday, the plaintiff was called to work at the SMU library. Defendant Simon, a prison guard, (Filing No. 9, ¶ 10), told defendant Dallmann, a caseworker in TSCI housing unit 3, (Filing No. 9, ¶ 11), to contact the plaintiff and advise him to report to turnkey for work. Filing No. 9, ¶ 27. When Dallman did so, the plaintiff responded that he was not scheduled to work that evening and would not go to work because he was the Seba for a Ma'at worship service scheduled that night. Filing No. 9, ¶ 27-28. The plaintiff went to and conducted the Ma'at service, and did not report for work as directed. Filing No. 9, ¶ 29 & ex. 4.

On May 25, 2005, Caseworker Dallman completed a Disciplinary Misconduct Reporting Form which cited the plaintiff for disobeying a direct order, failing to work, and violating prison regulations. Filing No. 9, ¶ 31 & ex. 4. A hearing was held before an investigating officer on May 25, 2005. The plaintiff attended the hearing with a representative. At the plaintiff's request, defendant Heard attended the hearing as a witness. SMU law library employee rosters and the religious roster for May 23, 2005 were also submitted as evidence. The investigating officer found that Dallmann's complaint should not be dismissed and set a hearing before the Institutional Disciplinary Committee ("IDC"). Filing No. 9, ex. 4.

An IDC hearing was held on June 7, 2005. Filing No. 9, ¶ 32 & ex. 5. Defendant Hillman was the Chairperson of the IDC. Filing No. 9, ¶ 9. The plaintiff attended the hearing with his representative. The plaintiff did not dispute that he was directed to report to work and refused to do so. However, he claimed he was not scheduled to work on May 23, 2005, and was not aware that his SMU position required him to be "on call" and attend work when he was busy with other activities. The plaintiff explained that he is the high priest of the Ma'at religious group at the facility, and on the evening of May 23, 2005, he refused to work in the library because he was scheduled to lead a worship service and "couldn't leave [his] brothers hanging." Filing No. 9, ex. 5. He alleges he would not have agreed to the SMU law library position had he known it could require him to work on a religious night. Filing No. 9, ¶ 32-35. The plaintiff's scheduling roster was offered as evidence to show he was never scheduled to work on religious nights. Filing No. 9, ¶ 36.

The plaintiff had requested that defendants Heard and Simon attend the IDC hearing as witnesses. Heard was present at the hearing; Simon was not present but did provide written answers to questions asked by the plaintiff and the committee. The plaintiff claims defendant Simon's written answers did not adequately respond to the plaintiff's questions; specifically, Simon did not explain why Russle was not called into work on the night of May 23, 2005. Filing No. 9, ¶ 38 & ex. 5.

The plaintiff called defendant Heard as a witness to testify that the May 23, 2005 incident arose from a miscommunication. However, defendant Heard testified that the plaintiff knew he was the only legal aide at the facility on May 23, 2005, and he was told that until someone else could be hired, he would have to take the majority of the SMU calls. Defendant Heard stated that the plaintiff was not excused from working on Mondays and Thursdays due to his religious practices, and he knew he could be contacted at any time to work and would be paid extra for extra work performed. She further stated that the plaintiff did not sign a contract, but did sign a tentative schedule listing the expected job duties. Defendant Heard further explained at the hearing that although Russle could otherwise have gone to the SMU on May 23, 2005, the unit manager ward had specifically requested an inmate with J-8 authorization, and Russle did not have an approved J-8. Filing 9, ex. 5. The written temporary approval for Russle to work in the library was offered as evidence at the hearing. Filing No. 9, ¶ 37 & ex. 5.

5

Based on the evidence presented, the IDC concluded the plaintiff was guilty of failing to report to work when directed by staff. The plaintiff was placed on a seven-day work restriction and a seven-day room restriction effective June 8, 2005. The plaintiff did not lose any good time and was not placed in disciplinary segregation. Filing No. 9, ¶ 39 & ex. 5.

Immediately after the IDC hearing and ruling, the plaintiff submitted an inmate interview request to determine if he would be allowed to resume work as a legal aide following his seven-day room and work restriction. He claimed the incident of May 23, 2005 "was nothing more than a communication or scheduling misunderstanding." Defendant Quinn responded that plaintiff would not be allowed to return to his position in the law library because he failed to follow the staff's directives. Filing No. 9, ¶ 41 & ex. 6.

The plaintiff filed an informal grievance on June 10, 2005. His grievance stated that firing him from his position in the SMU law library violated Title 68 Nebraska Administrative Code, Chapter 7 § 003.04 and his constitutional right to freedom of religion because he was not scheduled to work on May 23, 2005, and he was fired for choosing to participate in religious services rather than report for work. Title 68 Nebraska Administrative Code, Chapter 7 § 003.04 states:

> Religious Practices. It is the Department's policy that all inmates in its facilities have an opportunity to practice the religion of their choice. However, participation in congregate religious services may be limited those inmates in general population.

Filing No. 9, ex. 11. Defendant Schmidt concluded plaintiff would not be allowed to return to his legal aide position due to his failure to follow orders. Filing No. 9, ¶ 42 & ex. 7.

The plaintiff filed a step one grievance with defendant Britten. Filing No. 9, ¶ 43 & ex. 8. Defendant Britten responded:

> Librarian Heard informed you that you were required to work and would be called at any time to go to the Special Management Unit. You were informed that your presence at work was required and when you failed to go to work, Caseworker Dallman wrote a misconduct report for failure to work. We understand that your religious activities are importation to you; however, in accordance with AOM 208.0101,. . . work area supervisors are not mandated or required to release an inmate from work for worship if their presence at work is essential.

Filing No. 9, ¶ 43 & ex. 9. Plaintiff alleges that AOM 208.0101 is not applicable to his circumstances because he was not at work or scheduled to work on the evening of May 23, 2005. Filing No. 9, ¶ 44.

6

The plaintiff filed a step two grievance to the Director of the Nebraska Correctional Services, specifically stating that defendant Heard never told him he could be called to work at any time. Filing No. 9, ¶ 45. Defendant Hopkins returned the grievance unanswered because it was the subject of a disciplinary proceeding. Filing No. 9, ¶ 46 & ex. 10.

The plaintiff appealed the IDC ruling to the DCS Appeals Board. Filing No. 9, ¶ 47. On appeal, the plaintiff claimed: 1) he did not disobey a direct order; 2) his sanction was excessive; 3) Hillman violated his right to freedom of religion; 4) Hillman was capricious, retaliatory, and vengeful; and 5) he was not allowed to question Sergeant Simon at the IDC hearing. Filing No. 9, ¶¶ 47-48 & exs. 11-13.

An appeals board hearing was held on July 14, 2005 before defendants Blum, Sabatka-Rine, and Richard. Filing No. 9, ex. 13. The appeals board rejected the plaintiff's claims. It found that Caseworker Dallman, not defendant Heard, was the proper and actual reporting employee, and that the plaintiff had waived his presence at the hearing. It concluded that since the plaintiff had failed to explain what evidence Sergeant Simon could have offered in person that was not already available through responses to written questions, there was no merit to plaintiff's claim that he was denied a sufficient hearing because Sergeant Simon did not attend. Finally, it found that the sanction imposed was within the guidelines set by the department and was not excessive. The appeals board concluded there was substantial evidence that the plaintiff violated the facility's rules, explaining "Inmate Dean chose to go to a religious meeting rather than report to work." Filing No. 9, ex. 13. The appeals board ruling was forwarded to the institution on July 14, 2005. Filing No. 9, ex. 13.

The plaintiff alleges he was fired from his legal aide position because of the IDC's determination that he failed to report to work as ordered. Filing No. 9, ¶ 40. He claims this IDC ruling was based on defendant Heard's untruthful testimony at the IDC hearing. Filing No. 9, ¶ 32-35. The plaintiff claims defendant Heard lied when she testified that she told the plaintiff "there may be times you'll have to work in SMU regardless if its on a religious night." He alleges he "did not refute this lie at the IDC hearing . . . because at the time plaintiff was still seeking employment from defendant Heard." Filing No. 9, ¶ 33.

Based on all the foregoing facts, the plaintiff claims the defendants, in both their individual and official capacities, violated his statutory and constitutional right to free exercise of religion, his Fourteenth Amendment right to equal protection, and his due process rights. He seeks punitive damages and prospective relief under 42 U.S.C. § 1983. Filing No. 9, ¶¶ 62-66.

## Legal Analysis

A.   Eleventh Amendment Immunity.

"[T]he Eleventh Amendment grants the State a legal power to assert a sovereign immunity defense should it choose to do so." Wisconsin Dept. of Corrections v. Schacht

524 U.S. 381, 389 (1998). All of the named defendants have raised a sovereign immunity defense in their answers to the plaintiff's amended complaint.

Sovereign immunity does not bar damage claims against state officials acting in their personal capacities, nor does it bar § 1983 claims seeking equitable relief from state employee defendants acting in their official capacity. However, damage claims against individual state employees acting in their official capacities are barred by the Eleventh Amendment. Murphy v. State of Ark., 127 F.3d 750, 754 (8th Cir. 1997).

Accordingly, to the extent that the plaintiff seeks punitive damages from the named defendants in their official capacity, such claims must be dismissed as barred by the Eleventh Amendment. See 28 U.S.C. § 1915(e)(2)(iii)(authorizing the court to dismiss complaints filed in forma pauperis when the plaintiff "seeks monetary relief against a defendant who is immune from such relief").

      B.    Equal Protection Claims.

The Fourteenth Amendment provides that "[n]o State shall ... deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1. The government is required "to treat similarly situated people alike," (City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 439 (1985)), and this requirement extends to prison inmates. Turner v. Safley, 482 U.S. 78, 84 (1987).

To prevail on an equal protection claim, an inmate plaintiff must allege he was treated differently than a similarly situated class of inmates, that the different treatment burdened one of his fundamental rights, and that the different treatment bears no rational relation to any legitimate penal interest. Murphy v. Missouri Dept. of Corrections, 372 F.3d 979, 984 (8th Cir. 2004). Taking as true the allegations of the plaintiff's complaint, the plaintiff has failed to allege his equal protection rights were violated. His amended complaint contains no allegation that those worshiping the Ma'at religion were singled out for unfair treatment as compared to those practicing other religions in the prison. See Cruz v. Beto, 405 U.S. 319, 322 (1972). Therefore, to the extent the plaintiff's amended complaint seeks recovery under the Equal Protection Clause, such claims must be dismissed. Rouse v. Benson, 193 F.3d 936, 942 (8th Cir. 1999)(affirming judgment for the prison where the inmate failed to show that other inmates following other religions were not similarly treated with respect to prison transfers). See also Runningbird v. Weber, 198 Fed. Appx. 576, 578, 2006 WL 2466194, **2 (8th Cir. 2006)("general verified allegations about other religious groups being treated more favorably are not sufficiently specific to support an equal protection claim").

      C.    Due Process Claims.

The Supreme Court has held that "[a]s long as the conditions or degree of confinement to which the prisoner is subjected is within the sentence imposed upon him and is not otherwise violative of the Constitution, the Due Process Clause does not in itself

8

subject an inmate's treatment by prison authorities to judicial oversight." Montanye v. Haymes, 427 U.S. 236, 242 (1976). "In order to prevail on a Fourteenth Amendment due process claim, the plaintiff must allege that he was deprived of life, liberty or property by government action." Singleton v. Cecil, 155 F.3d 983, 987 (8th Cir.1998). With respect to actions filed by prison inmates, the court must determine whether the deprivation "impose[d] atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life". Sandin v. Conner, 515 U.S. 472, 484 (1995); Callender v. Sioux City Residential Treatment Facility, 88 F.3d 666, 669 (8th Cir. 1996)(noting that following Sandin, courts focus on the deprivation itself and not on whether mandatory language exists in statutes or prison regulations).

The plaintiff alleges his due process rights were violated during the IDC and DCS Appeals Board proceedings. Filing No. 9, ¶¶ 55-56. Although the focus of these claims is not entirely clear from the allegations of the amended complaint, the plaintiff may be alleging his due process rights were violated when he was terminated from his legal aide position in the library without an adequate hearing. He may also be alleging that imposing a seven-day work restriction and a seven-day room restriction violated his due process rights. Finally, he may be claiming his due process rights were violated when defendant Heard provided untruthful testimony at the IDC hearing, or because defendant Simon was not available to testify in person. These potential claims will be addressed in turn.

      1.     Loss of legal aide employment.

To the extent that the plaintiff complains about losing his prison library job, his amended complaint is insufficient. The plaintiff cites Title 68 of the Nebraska Administration Code, Chapter 7 § 003.04 in support of his claim. That regulation states:

> It is the Department's policy that work opportunities be made available to all inmates in the general populations of the Department's long-term residence facilities. The Department may require such inmates to participate in work programs, upon penalty of disciplinary actions.

See Filing No. 9, ex. 11 (Filing No. 9-2, p 33). This regulation does not contain language guaranteeing that the plaintiff will be afforded a particular job, or even any employment, while incarcerated within the Department of Correctional Services.

The Eighth Circuit has long held that the loss of a prison job, the compensation derived from that job, or the expectation of keeping a particular prison job does not implicate any property or liberty interest entitled to due process protection. See Flittie v. Solem, 827 F.2d 276, 278 (8th Cir.1987) ("[I]nmates have no constitutional right to be assigned a particular job."); Lyon v. Farrier, 727 F.2d 766, 769 (8th Cir.1984) (concluding an inmate has no constitutional right to a prison job nor to retain a particular job); Peck v. Hoff, 660 F.2d 371, 373 (8th Cir.1981) (determining inmate had no legal entitlement or right to particular job assignment). See also Newsom v.Norris, 888 F.2d 371, 374 (6th Cir.1989); Garza v. Miller, 688 F.2d 480, 486 (7th Cir. 1982). Moreover, the loss of a prison

9

job is not an atypical or significant hardship in relation to the ordinary incidents of prison life. Callender, 88 F.3d at 670 (reversing a judgment in favor of an inmate for denial of procedural and substantive due process because the inmate had no constitutionally protected liberty interest in a work release program, and revocation of his work release status did not impose an atypical and significant hardship upon him in relation to the ordinary incidents of prison life). See also Bulger v. United States Bureau of Prisons, 65 F.3d 48, 49-50 (5th Cir. 1995)(holding inmate's termination from his UNICOR job and reassignment to a non-UNICOR job did not impose an atypical and significant hardship on him in relation to the ordinary incidents of prison life).

Accordingly, to the extent the plaintiff is attempting to allege a due process claim arising from the loss of his legal aide job, this claim must be dismissed.

    2.    Imposition of discipline: the seven-day work and room restriction.

The plaintiff has also failed to state a due process claim arising from the disciplinary ruling reached by the IDC and affirmed by the DCS Appeals Board. Imposing a seven-day work and room restriction did not subject the plaintiff to "an atypical and significant hardship . . . in relation to the ordinary incidents of prison life." Davis v. Norris, 2007 WL 2142391, *1 (8th Cir. July 27, 2007)(C.A.8 (Ark. (C.A.8 (Ark.),2007)(affirming pre-service dismissal of prisoner's pro se complaint with prejudice where he alleged he was forced to endure more restrictive living conditions, but these conditions did not amount to an "atypical and significant" hardship); Sterling/Sayyed v. Banks, 72 Fed.Appx. 504, 505-506, 2003 WL 21802122,**1 (8th Cir. 2003)(affirming dismissal of a pro se inmate's due process claims for lack of allegations showing that his reduction to Level One status and the temporary loss of certain privileges amounted to an atypical and significant hardship).

To the extent the plaintiff is claiming the seven-day work and room restriction violated his due process rights, this claim must be dismissed.

    3.    IDC Hearing: Untruthful testimony of defendant Heard.

The plaintiff alleges defendant Heard provided false testimony at his disciplinary hearing to protect herself from scrutiny over her own job performance. He does not allege that she provided false information in retaliation for any exercise of his rights or for filing a grievance. See e.g. Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1994).

As to defendant Heard's testimony, the plaintiff's claim is limited to whether her allegedly false testimony violated his due process rights. However, absent a threshold showing that the challenged deprivation imposed an atypical and significant hardship, an inmate has not demonstrated the violation of a protected liberty interest warranting due process protection. Portley-El v. Brill, 288 F.3d 1063, 1065 (8th Cir. 2002).

Even had the plaintiff alleged the loss of a liberty or property interest, his allegation that defendant Heard provided false testimony at the IDC hearing does not present a procedural due process claim.

> The prison inmate has no constitutionally guaranteed immunity from being falsely or wrongly accused of conduct which may result in the deprivation of a protected liberty interest. The plaintiff, as all other prison inmates, has the right not to be deprived of a protected liberty interest without due process of law.

Freeman v. Rideout, 808 F.2d 949, 951 (2d Cir. 1986). The court's assessment of whether procedural due process was afforded in prison disciplinary hearings does not include examining the entire record, independently assessing the credibility of witnesses, or weighing of the evidence. Superintendent, Massachusetts Correctional Institution, Walpole v. Hill, 472 U.S. 445, 455 (1985). Rather, due process is satisfied when an inmate is afforded an opportunity to be heard and to defend against the allegedly falsified evidence. So long as certain procedural requirements are satisfied, mere allegations of falsified evidence or misconduct reports, without more, are not enough to state a due process claim. Freeman, 808 F.2d at 953.

Based on the plaintiff's allegations, and the exhibits attached to his amended complaint, the plaintiff attended the IDC hearing and offered evidence. Though he alleges he chose not to challenge certain testimony of defendant Heard because he was hoping to keep his job, (Filing No. 9, ¶ 33), he had the opportunity to challenge her testimony. The plaintiff has failed to state a due process claim arising from defendant Heard's alleged false testimony at the IDC hearing.

    4.    IDC Hearing: Defendant Simon's failure to testify or completely answer questions.

Similarly, the law does not support plaintiff's claim that his due process rights were violated because defendant Simon failed to testify or fully respond to plaintiff's written questions. Sandin v. Conner, 515 U.S. 472 (1995) defeats any such claim. In Sandin, an inmate had been charged with multiple disciplinary infractions, but the inmate's request to produce certain witnesses at his hearing was refused by the hearing committee because the witnesses were unavailable. The plaintiff was found guilty of misconduct and sentenced him to 30 days in segregated confinement. He filed a § 1983 suit claiming prison officials deprived him of procedural due process by refusing to allow him to present witnesses during a disciplinary hearing. See Sandin, 515 U.S. at 475-76. The Court held that confinement in administrative or punitive segregation is rarely the kind of "atypical" deprivation of prison life necessary to implicate a liberty interest, and therefore the plaintiff's procedural and substantive due process claim challenging the committee's disciplinary decision and the hearing process itself must fail. Sandin, 515 U.S. at 486.

Therefore, to the extent the plaintiff may be claiming his due process rights were violated because defendant Simon failed to attend the hearing or adequately answer plaintiff's written questions, this claim must be dismissed for failure to state a claim.

To summarize, pursuant to the court's sua sponte review under 28 U.S.C. § 1915(e)(2)(ii) and (iii), plaintiff's equal protection and due process claims as to all the defendants in their official and individual capacities, and all claims for punitive damages against all defendants in their official capacities, are dismissed with prejudice

## MOTION FOR SUMMARY JUDGMENT

The plaintiff claims the prison violated his right to freedom of religion by requiring him either to be available to work during times when Ma'at religious services are scheduled, or not work as an SMU legal aide. The plaintiff's constitutional claim alleges a violation of his free exercise of religion as guaranteed under the First Amendment. He has also raised an independent statutory claim under the Religious Land Use in Institutionalized Persons Act of 2000, ("RLUIPA"), 42 U.S.C. § 2000cc-1, which is subject to review under a different standard. These claims will be addressed in ruling on the motion for summary judgment filed by defendants, Frances Britten, Martha Schmidt, Pam Hillman, Sergeant Simon, Caseworker Dallmann, Diane Sabatka-Rine, and Jodi Heard, in their individual capacities. Filing No. 53.

### Standard of Review

A motion for summary judgment is "properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive determination of every action.'" Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986). In response to the moving party's evidence, the opponent's burden is to "come forward with 'specific facts showing that there is a genuine issue for trial.'" Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). "[T]here is no issue for trial unless there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).

> Once the moving party has met its burden of showing "the absence of a genuine issue of material fact and an entitlement to judgment as a matter of law[,] . . . the non-moving party may not rest on the allegations of his pleadings, but must set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists."

Krein v. DBA Corp., 327 F.3d 723, 726 (8th Cir. 2003) (quoting Stone Motor Co. v. Gen. Motors, Corp., 293 F.3d 456, 465 (8th Cir. 2002)(internal citations omitted)).

### Evidence on Summary Judgment

12

Nearly all the evidence submitted on the pending motion for summary judgment was filed as an attachment to the plaintiff's amended complaint. The evidence attached to plaintiff's amended complaint will be relied on in resolving the summary judgment motion, but it will not be repeated or re-summarized in this portion of the memorandum and order. In addition to the evidence already discussed, the following admissible and undisputed evidence has been submitted in support of the moving defendants' summary judgment motion:

As of May 23, 2005, Pat Russle, who had been temporarily approved to work in the SMU law library, had not received a "J-8" authorization. Pursuant to the prison's operational memorandum for security and control of inmate movements, only those inmates with J-8 authorization ("Special Detail Authorization") can be moved "to a work activity or location that is NOT the normal work activity/location/time for the assigned inmate," and summoned to work at a special time or location, or to work not normally assigned to that inmate. Filing No. 55, ex. 9, p. 3.

Defendant Heard terminated the plaintiff's employment as an SMU legal aide because he did not report to work when called on May 23, 2005. Defendant Heard had told the plaintiff that he would have to work in the SMU when he was needed, as he was the only legal aide who had an approved J-8 (special work detail form) to work in that area. She had also told him that it was imperative that he report for work when called. The plaintiff was completely aware of this job responsibility when he refused to go to work on May 23, 2005. Filing No. 55, ex. 10.

## Legal Analysis

The court's determination and ruling on plaintiff's free exercise of religion claim begins with acknowledging the following:

- The plaintiff never worked during a Ma'at worship service;

- He is not challenging a prison institutional regulation or policy that, on its face, required him to work during Ma'at worship services;

- He does not challenge the SMU legal aide job description itself; that is, he does not claim it is unnecessary or unreasonable to require SMU legal aides to be "on call" to assist inmates needing access to law library resources. Rather, he claims someone else should have been called on May 23, 2005;

- The unit manager requested an SMU legal aide with J-8 authorization, and on May 23, 2005, the plaintiff was the only SMU legal aide who had such authorization;

- The SMU legal aide position is not a job all inmates are required to perform. The plaintiff chose to apply for and work as an SMU legal aide;

- The undisputed and admissible evidence establishes that the plaintiff was told that since he was the only J-8 authorized SMU legal aide on May 23, 2005, he was on call to work when needed.

- Even assuming (as plaintiff alleges) that he was not told he may be "called in" and required to work even during the scheduled hours of Ma'at worship services, the plaintiff admits that had he known this, he would have resigned from his employment in the SMU legal aide position; and

- Due to his refusal to work during a Ma'at worship service, the plaintiff is no longer employed as an SMU legal aide.

In other words, though due to firing rather than resignation, the plaintiff is in the position he would have chosen for himself: He is able to practice the Ma'at faith without the risk of being called in to work as an SMU legal aide. Moreover, based on the undisputed evidence, neither plaintiff's First Amendment rights, nor his rights under RLUIPA, 42 U.S.C. § 2000cc-1, were implicated by requiring the plaintiff to either report for work on the evening of May 23, 2005 or lose his job.

    A.    First Amendment Claim.

Prisoners retain their constitutional rights. However, "limitations may be placed on the exercise of those rights in light of the needs of the penal system." Murphy v. Missouri Dept. of Corrections, 372 F.3d 979, 982 (8th Cir. 2004)(citing Turner v. Safley, 482 U.S. 78, 81 (1987). A prison action is constitutionally valid, even if it restricts a prisoner's constitutional rights, provided if it is "reasonably related to legitimate penological interests." Murphy, 372 F.3d at 982 (citing Turner, 482 U.S. at 89).

Under Turner, the court must first determine whether there is a "valid rational connection" between the prison regulation and the government interest justifying it. Turner, 482 U.S. at 89. Second, the court must consider whether there is an alternative means available to the prison inmates to exercise the right. Turner, 482 U.S. at 90. The third consideration is whether accommodating the inmate would have "a significant ripple effect" on the guards, other inmates, and prison resources. Turner, 482 U.S. at 90. Finally, the court must evaluate whether there is an alternative that fully accommodates the prisoner "at de minimis cost to valid penological interests." Turner, 482 U.S. at 90-91.

To analyze of plaintiff's claim arising under the First Amendment:

We consider first the threshold issue of whether the challenged governmental action "infringes upon a sincerely held religious belief," Hamilton v. Schriro, 74 F.3d 1545, 1550 (8th Cir.1996), and then apply the Turner factors to determine if the regulation restricting the religious practice is "reasonably related to legitimate penological objectives." O'Lone v. Estate of Shabazz,

14

>  482 U.S. 342, 353, 107 S.Ct. 2400, 96 L.Ed.2d 282 (1987). We accord great deference to the judgment and expertise of prison officials, "particularly with respect to decisions that implicate institutional security." Goff v. Graves, 362 F.3d 543, 549 (8th Cir.2004).

Murphy, 372 F.3d at 983.

For the purposes of this motion for summary judgment, the court assumes the plaintiff genuinely believes that attending Ma'at worship services is necessary to his faith. Applying the first Turner factor, the plaintiff's allegations indicate a "valid rational connection" existed between the prison's demand that the plaintiff report to work at the law library and the government interest served by that demand. Requiring the plaintiff to report to work at the SMU law library when called furthers the prison's interest and responsibility to provide legal aide services for inmates within the facility.

As to the second Turner factor, the plaintiff was afforded sufficient alternative means of worshiping. The plaintiff has not alleged he was prohibited from privately practicing his faith through meditation, prayer, or study, or that other than the evening of May 23, 2005, he was ever directed to work rather than attend congregate worship. "A prisoner need not be afforded his preferred means of practicing his religion as long as he is afforded sufficient means to do so." Murphy, 372 F.3d at 983 (citing Hammons v. Saffle, 348 F.3d 1250, 1256 (10th Cir. 2003)). See O'Lone, 482 U.S. at 352 (holding that Muslim prisoners had sufficient alternative means of exercising their religion even though a prison regulation made it impossible to practice a particular Muslim ritual).

As to the third and fourth Turner factors, due to an SMU legal aide's resignation on May 20, 2005, and until another employee could be hired, the plaintiff was the only SMU legal aide authorized under prison security regulations to work in the SMU library on May 23, 2005. Other than permitting Russle to perform the job in violation of the prison security operational memorandum, the prison either had to call the plaintiff in to work, or have no SMU legal aide on duty. The plaintiff refused to work. This refusal had a "ripple effect" on those inmates who relied on him for access to legal aide services on May 23, 2005. Moreover, had he been permitted to refuse to work without consequence, the prison's ability to enforce regulations requiring others to work as directed would have been undermined.

Based on the foregoing, I conclude the moving defendants are entitled to summary judgment on plaintiff's First Amendment free exercise of religion claims.

    B.    Religious Land Use and Institutionalized Persons Act.

15

The plaintiff has also raised a RLUIPA claim.[1]  This act established a statutory free exercise of religion claim with a different standard of review than that applied to First Amendment claims.  RLUIPA states:

> No government shall impose a substantial burden on the religious exercise of a person residing in or confined to an institution, as defined in section 2 of the Civil Rights of Institutionalized Persons Act (42 U.S.C. § 1997), even if the burden results from a rule of general applicability, unless the government demonstrates that imposition of the burden on that person -
>
> (1)   is in furtherance of a compelling governmental interest; and
>
> (2)   is the least restrictive means of furthering that compelling governmental interest.

42 U.S.C. § 2000cc-1(a). 4.

The RLUIPA requires the plaintiff to show, as a threshold matter, that the prison substantially burdened on his ability to exercise his religion.  42 U.S.C. § 2000cc-2(b).

> To constitute a substantial burden, the government policy or actions must significantly inhibit or constrain conduct or expression that manifests some central tenet of a person's individual religious beliefs; must meaningfully curtail a person's ability to express adherence to his or her faith; or must deny a person reasonable opportunities to engage in those activities that are fundamental to a person's religion.

Murphy, 372 F.3d at 988.

According to plaintiff's submissions, the requirements for worship in the Ma'at faith include 1) study; 2) meditation; 3) prayer; 4) observance of sacred days; and 5) service, i.e., lectures, discussion, libation and other rituals.  Filing No. 9, ex. 1. p. 18. The plaintiff has submitted no evidence that May 23, 2005 was a Ma'at sacred day, that the prison significantly inhibited him from practicing some central tenet of the Ma'at faith, or that due to prison regulations or policies, he was unable to worship or study with other Ma'at

---

[1] RLUIPA resurrects, on a more limited basis, the Religious Freedom Restoration Act of 1993 (RFRA) which was held unconstitutional as applied to states and localities. City of Boerne v. Flores, 521 U.S. 507 (1997).

16

believers. He has presented no evidence that he was denied reasonable opportunities to engage in activities fundamental to his religion.[2]

I therefore conclude the plaintiff has failed to present threshold evidence that the prison substantially burdened his ability to practice the Ma'at faith. The moving defendants are entitled to summary judgment on plaintiff's RLUIPA claim.

    C.    Qualified Immunity.

All of the defendants, including those who have moved for summary judgment, have raised the defense of qualified immunity. Qualified immunity shields government officials from suit, unless their conduct violated "clearly established statutory or constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982).

As an alternative basis for granting summary judgment, I find that the moving defendants, in their individual capacities, are entitled to qualified immunity. A reasonable prison official would not have known that requiring the plaintiff to report to work on a Monday night, or terminating his job for failure to do so, would violate his constitutional or statutory right to free exercise of religion. Roddy v. Banks, 124 Fed.Appx. 469, 471, 2005 WL 433404, **1 (8th Cir. 2005).

Accordingly,

IT IS ORDERED:

1. On or before August 23, 2007, the plaintiff shall file a certificate, signed by the plaintiff and including his current address, which states that the allegations and legal contentions set forth in the amended complaint, filing 9, are his. Absent timely compliance with this order, the court will strike the plaintiff's amended complaint without further notice.

---

[2]At the IDC hearing, the plaintiff explained that he attended the Ma'at Monday night worship service on May 23, 2005 instead of reporting to work because he was scheduled to lead the service and "couldn't leave [his] brothers hanging." Filing No. 9, ex. 5. However, the Monday services for the Amen-Ra Temple of Maat include a "Husitic and Contemplation reading in which a student/teacher volunteers or is instructed to come up to the podium and read pre-selected utterance, (paragraph or sentences)," chosen from the Husia. The reader states what he believes the utterance is trying to convey, and then the group discusses the interpretation. Filing No. 9, ex. 3. For Thursdays, which are education nights, someone prepares a program and then presents it to the others. Filing No. 9, ex. 3.

2. The plaintiff's claims against defendant Quinn, in his individual and official capacities, are dismissed with prejudice for want of prosecution.

3. The plaintiff's claim for punitive damages against defendants Frank Hopkins, Frances Britten, Rex Richard, Kathy Blum, Diane Sabatka-Rine, Martha Schmidt, Pam Hillman, Sergeant Simon, Caseworker Dallmann, and Jodi Heard, in their official capacities, are dismissed with prejudice.

4. The plaintiff's equal protection and due process claims against defendants Frank Hopkins, Frances Britten, Rex Richard, Kathy Blum, Diane Sabatka-Rine, Martha Schmidt, Pam Hillman, Sergeant Simon, Caseworker Dallmann, and Jodi Heard, in their individual and official capacities, are dismissed with prejudice.

5. The motion for summary judgment filed by defendants Frances Britten, Martha Schmidt, Pam Hillman, Sergeant Simon, Caseworker Dallmann, Diane Sabatka-Rine, and Jodi Heard, in their individual capacities only, Filing No. 53, is granted.

6. Defendants Kathy Blum, Frank Hopkins, and Rex Richard, in their individual capacities and official capacities, and defendants Frances Britten, Martha Schmidt, Pam Hillman, Sergeant Simon, Caseworker Dallmann, Diane Sabatka-Rine, and Jodi Heard, in their official capacities, are given until August 23, 2007 to move for summary judgment on plaintiff's free exercise of religion claims.

Dated this 6th day of August, 2007.

BY THE COURT:

s/Laurie Smith Camp
United States District Judge